CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 11 2022

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# DANVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | )<br>)<br>) Case Nos. 4:14CR00009<br>)                4:14CR00014<br>) |
| v. | )<br>) **OPINION AND ORDER** |
| **PATRICK VINCENT CROWE,** | )<br>) JUDGE JAMES P. JONES |
| Defendant. | ) |

*Whitney D. Pierce, Assistant United States Attorney, Abingdon, Virginia, for United States; Andrea L. Harris, Assistant Federal Public Defender, Charlottesville, Virginia, for Defendant.*

Defendant Patrick Vincent Crowe, sentenced in 2014 by the late District Judge Jackson L. Kiser of this court, has moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018). His motion is based on an urgent need for medical care to prevent amputation of his foot, as well as the risk posed to him by the COVID-19 pandemic. For the reasons that follow, I will grant the motion, but will require him to serve a period of home confinement.

I.

In 2008, in the District of Rhode Island, Crowe pled guilty to two counts of theft from an employee benefit program and two counts of failure to account for and pay over withheld federal payroll taxes. The facts underlying that case were that

Crowe had purchased a trucking company, defaulted on the company's debts, retained employees' FICA[1] and healthcare contributions, then purchased another company and did the same thing. While on bond pending sentencing, Crowe was arrested for grand theft and uttering a forged check. He had allegedly passed at least eight checks with insufficient funds in Florida and Connecticut.

Crowe had an extensive criminal history stretching from 1974 to 2007, mostly consisting of various frauds, thefts, and other financial crimes. He committed arson of an unoccupied structure in the late 1970s, and in 2007, he was convicted of domestic battery. The court in Rhode Island sentenced Crowe to an above-Guidelines sentence of 48 months.

After Crowe served that period of incarceration and began a term of supervised release, his supervision was eventually transferred from Rhode Island to the Southern District of Florida. In 2014, Crowe uttered a fraudulent check in Rhode Island and embezzled from an employee benefit plan in Virginia. The Southern District of Florida transferred Crowe's supervision to this district, where new charges were brought against him.

In August 2014, Crowe pled guilty to one count of embezzling from an employee benefit plan, in violation of 18 U.S.C. § 664, and one count of failing to

---

[1] FICA, an acronym for Federal Insurance Contributions Act, is the federal payroll tax that funds the Social Security and Medicare programs.

pay federal payroll taxes, in violation of 26 U.S.C. § 7202. Case No. 4:14CR00014, ECF No. 15. He had again purchased a business, took out loans he never intended to repay, and retained employees' payroll deductions. In a binding Plea Agreement, Crowe and the government agreed to a sentence of 120 months, to be split between the new charges in this case and the supervised release violation in the Southern District of Florida.

Judge Kiser sentenced Crowe to the agreed-upon sentence of 120 months. The Post Sentence Report ("PSR") prepared by a probation officer of this district showed that since his 2008 conviction in the District of Rhode Island, Crowe had incurred additional convictions: a 2008 conviction for grand theft, 2011 convictions for passing bad checks, and 2011 convictions for passing a forged or altered instrument and grand larceny.

Crowe is currently 70 years old. He has been in custody since October 7, 2014, and has served about 88 months, representing about 73 percent of his total sentence and about 86 percent of the time he would serve accounting for good time credit. His projected release date is April 12, 2023, and he will be eligible for home detention on October 12, 2022.

On September 30, 2020, Crowe was released to home confinement under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Bureau of Prisons ("BOP") approved his release to

the home of a friend. This was problematic, however, because his friend was licensed to serve as a foster parent, and his presence in the home jeopardized her license. He was thus returned to custody in late 2020.

The PSR indicated that in 2014, Crowe "advised he has been diagnosed with high blood pressure, high cholesterol, and heart arrhythmia. Additionally, he reported he had a stroke in April 2014 and has a collapsed left foot." PSR ¶ 41, Case No. 4:14CR00009, ECF No. 32. It is clear from BOP medical records that Crowe has a long-standing foot deformity that may have resulted from a motor vehicle accident several decades ago. A May 2018 X-ray of Crowe's left foot showed extensive soft tissue swelling, degenerative joint changes, osteopenia, a "partially fused distal third of the great toe distal phalanx," "[v]estigial left fifth toe middle and distal phalanges," and a "partially fused accessory ossicle." Mot. Exs. at 4, Case No. 4:14CR00009, ECF No. 28.

Crowe told a provider that his condition worsened in 2018 when working with physical therapy while housed at a BOP facility. In September 2019, he was required to stand for a long period of time and experienced sudden pain. Thereafter, he was "mostly wheelchair bound." *Id.* at 265. He reported that in January 2021, he fell after exiting a plane, and he has since been unable to bear any weight on his left foot.

Crowe was prescribed an ankle brace, which he began wearing in January 2019.  By the end of that month, however, he was experiencing sharp pain in his left foot and required the use of a cane.  He was issued a new ankle brace in June 2019.

In October 2019, Crowe was referred to a neurologist and vascular surgeon to evaluate him for surgical reconstruction of the foot.  He was referred for triple arthrodesis on February 7, 2020.  No surgery was performed, presumably due to pandemic restrictions.

When Crowe returned to prison from home detention in December 2020, he was issued a wheelchair.  On his way back to Fort Dix from Georgia, he was asked to walk from the plane to a bus, despite being able to walk only short distances.  He fell and has since been unable to walk.

On March 3, 2021, Crowe was again referred for surgical evaluation and an MRI.  On June 14, 2021, his ankle and foot were casted to stabilize them, as there was no appropriate boot or device that could do so.  Crowe was hospitalized on May 24, 2021, due to concerns about his foot.  He was diagnosed with cellulitis, deep vein thrombosis, and rapid rate fibrillation.  Following his discharge on May 26, 2021, he was required to quarantine for 14 days and was then transferred to a different BOP facility.  On June 15, 2021, his medical provider at his new facility, Federal Medical Center (FMC) Devens, requested another consultation with a

vascular surgeon and neurologist, as well as an MRI of the foot and ankle, but these have not occurred.

The BOP has classified Crowe as Care Level 4 — the most serious level — since March 2021, because he is wheelchair bound and requires assistance with activities of daily living. *Id.* at 307. He takes daily over-the-counter pain relievers and has attended a pain management clinic due to pain caused by his foot condition.

In November 2021, more than five months after he arrived at FMC Devens, Crowe was transported to Beth Israel Deaconess Medical Center in Boston for a consultation. Following his visit, the physician wrote, "He has a very serious issue. This is a chronic condition not at goal and he is at high risk of limb amputation as a result of this condition." Reply Supp. Mot. Ex. 1 at 3, Case No. 4:14CR00009, ECF No. 40.

In addition to his foot condition, Crowe is also obese and has been diagnosed with diabetes, hypertension, hyperlipidemia, atrial fibrillation, and sleep apnea. His severely limited mobility places him at greater risk from several of these conditions. Crowe is fully vaccinated against COVID-19. He received the Moderna vaccine on May 11, 2021, and June 10, 2021. Mot. Ex. 4 at 266, Case No. 4:14CR00009, ECF No. 28.

II.

The governing statute provides that a sentence may be reduced if "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has not issued any applicable policy statements after the statute was amended by the First Step Act in 2018. The Fourth Circuit has held in *United States v. McCoy*, 981 F.3d 271, 284, 286 (4th Cir. 2020), that when deciding a compassionate release motion, a district court may consider any extraordinary and compelling reason raised by the defendant.

I find that Crowe's medical condition related to his foot is an extraordinary and compelling reason for relief. The records indicate that he needs additional medical care. Further delay in treatment could cause him to lose his limb, which is clearly a severe outcome.[2]

I must "reconsider[] the § 3553(a) factors" to determine whether the sentence remains no greater than necessary to meet § 3553(a)'s goals "in view of the extraordinary and compelling circumstances." *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir.), *cert. denied*, 142 S. Ct. 383 (2021). Crowe has a lengthy and

---

[2] In light of this conclusion, I need not decide whether the risk posed to Crowe by the COVID-19 pandemic constitutes an extraordinary and compelling reason for his release.

serious criminal history. Prior periods of incarceration did not deter him from committing further crimes. I am also mindful that he agreed to his current sentence in his Plea Agreement, and it was an appropriate sentence at the time.

But Crowe has been incarcerated for more than seven years now and has incurred no disciplinary infractions during that time. That suggests that he is finally willing to follow the rules and does not currently pose a threat to the public. The BOP concluded as much when it released him to home detention in October 2020. During his period of more than two months of home confinement at the end of 2020, there were no issues with his behavior or compliance with the rules of his release.

Balancing all of these factors, I find that a reduction is warranted so that Crowe can seek immediate medical care for his foot condition. However, in light of his lengthy and serious criminal history, I find it appropriate that Crowe serve an additional period of home confinement upon his release.

III.

Upon motion of the defendant for a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, and for the reasons stated on behalf of the defendant, it is **ORDERED** that the motion, Case No. 4:14CR00009, ECF No. 24, Case No. 4:14CR00014, ECF No. 78, is GRANTED. The defendant's previously imposed sentences of

imprisonment are both REDUCED to TIME SERVED, to be followed by the three years of supervised release as imposed by the judgment in Case No. 4:14CR00014, and as modified herein.

This order is stayed for ten (10) calendar days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. If more than ten (10) calendar days are needed for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

The defendant's supervised release conditions are modified to add the following condition:

The defendant must serve six (6) months of home detention beginning immediately after release for 24-hours-a-day except for medical necessities and court appearances and other absences specifically approved in advance by the supervising probation officer, with location monitoring at the discretion of the probation officer.

The Clerk shall provide a copy of this Order to the Probation Office, which office shall provide a copy to the Bureau of Prisons.

ENTER: April 11, 2022

/s/ JAMES P. JONES
Senior United States District Judge


ENTER:  April 11, 2022

/s/ JAMES P. JONES
Senior United States District Judge